UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
----------------------------------------------------------------
                                 :

CHRISTOPHER CARR, *et al.*,         :

                        :            CASE NO. 1:17-CV-1875

        Plaintiffs,        :

                        :

        v.             :            ORDER

                        :            [Resolving Doc. 77]

BOB EVANS FARMS, INC., *et al.*,    :

                        :

        Defendants.       :

                        :
----------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The parties have settled Plaintiffs' Fair Labor Standards Act ("FLSA") claims for unpaid wages for non-tipped work.  Before the Court is Plaintiffs' unopposed motion for approval of settlement, appointment of a settlement administrator, service awards, and attorney's fees and costs.[1]

For the following reasons, the Court **GRANTS** the motion for approval of the settlement and the appointment of the settlement administrator.  The Court **GRANTS IN PART** and **DENIES IN PART** the motion for service awards and attorney's fees and costs.

# I. BACKGROUND

## A.  Factual and Procedural Background

On September 7, 2017, Plaintiffs Christopher Carr and Shureene Newsome – tipped servers at Bob Evans restaurants – filed this FLSA collective action lawsuit.[2]  In their complaint, Plaintiffs alleged that Defendants[3] violated the FLSA by paying their servers below the minimum tip-credit wage rate while requiring them to perform (1) non-tipped work unrelated to their tipped occupation and (2) related tipped work that exceeded 20% of their time worked in one or more workweeks.[4]

---

[1] Doc. 77.
[2] Doc. 1.
[3] Defendants are Bob Evans Farms, Inc.; Bob Evans Holdings, Inc.; Bob Evans Farms, LLC; and Bob Evans Restaurants, LLC. *Id.*
[4] *Id.*

Case No. 1:17-CV-1875
Gwin, J.

By January 2018, the parties agreed to conditional certification of the FLSA collective action.[5]

The parties then sent notice to 13,093 potential collective action members.[6]  Approximately 1,869

individuals opted in to this collective action.[7]

The parties then attended two full-day mediations in April 2018, culminating in the proposed

Settlement Agreement described in the next subsection.[8]  Plaintiffs now move for approval of the

settlement, appointment of a settlement administrator, service awards, and attorney's fees and costs.[9]

Defendants do not oppose.[10]

## B.  Settlement Agreement Terms

Under the proposed Settlement Agreement, Defendants will pay Plaintiffs $3 million.[11]

The Settlement Agreement contemplates distributing $1,743,122.38 of the fund to the named

Plaintiffs and the 1,867 opt-in Plaintiffs on a proportional basis based on the number of hours the

individuals worked during the relevant period.[12]  The distribution will be made according to payroll

information maintained by Defendants and provided to Plaintiffs' counsel, and according to further

specifications in the Settlement Agreement.[13]

The Settlement Agreement sets aside $24,500 as Service Awards.[14]  The Settlement

Agreement contemplates $10,000 awards to each of the two named Plaintiffs and $500 for each of

the nine deposed opt-in Plaintiffs.[15]

---

[5] Docs. 48, 50.
[6] Doc. 77-1 at 7.
[7] Id. at 2.
[8] Doc. 77-3 at ¶¶ 18-21.
[9] Doc. 77-1.
[10] Id.
[11] Doc. 77-2 at ¶ 24.
[12] Id. at ¶ 43.
[13] Id. at ¶¶ 43-45.
[14] Id. at ¶¶ 37(a), 9.
[15] Id.

Case No. 1:17-CV-1875
Gwin, J.

The Settlement Agreement also sets aside $21,000 for Optime Administration, LLC to administer the settlement;[16] and $1,211,377.62 as attorney's fees and costs.[17]

## II. ANALYSIS

### A.  Approval of Settlement

Congress enacted the FLSA to protect all covered workers from workplace inequities that result from differences in bargaining power between employers and employees.[18]

As a result, FLSA rights are not subject to bargaining, waiver, or modification by contract or settlement.[19]  The only two exceptions are for FLSA claims supervised by the Secretary of Labor or for settlements approved by a district court, as is the case here.[20]

To approve an FLSA collective action settlement, a district court need only engage in a one-step process.[21]  Because failure to opt in does not bar potential collective action members from bringing their own suits, FLSA collective actions do not implicate the same due process concerns as class actions under Federal Rule of Civil Procedure 23.[22]

When reviewing an FLSA collective action settlement, the district court must evaluate whether there is a *bona fide* dispute.[23]  This means ensuring "'that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'"[24]

To ensure that the settlement agreement's terms are fair and reasonable, a district court should also consider other factors such as the risk of fraud or collusion; the complexity, expense, and likely

---

[16] *Id.* at ¶ 37(e).
[17] *Id.* at ¶ 37(c).
[18] *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945).
[19] *See id.* at 704-08; *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982).
[20] *Lynn's Foods Stores*, 679 F.2d at 1352-53.
[21] *See, e.g.*, *Osman v. Grube, Inc.*, No. 3:16-CV-00802-JJH, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018).
[22] *See Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).
[23] *See Rotuna v. W. Customer Mgmt. Group LLC*, No. 4:09CV1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010).
[24] *Id.* (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2000) (alteration in original) (further citation omitted)).

-3-

Case No. 1:17-CV-1875
Gwin, J.

duration of the litigation; the amount of discovery engaged in; the likelihood of success on the merits; and the public interest in settlement.[25]

To start, the Court finds that the settlement was the product of a *bona fide* dispute. The parties disputed the legal and factual issues underlying the case, including the applicable Department of Labor regulation, statute of limitations issues, the applicable minimum wage rate, and the number of hours the servers spent on non-tipped work.[26] The parties also engaged in written discovery, conducted fifteen depositions, and attended two full-day mediations before settling.[27] The Court is satisfied that the parties did not negotiate around Plaintiffs' FLSA rights.

For much of these same reasons, the Court finds the Settlement Agreement's terms to be fair and reasonable. The disputed nature of the case lessens the risk of fraud and collusion, and the parties have shown that they engaged in extensive discovery.

While the Court doubts that this case was complex, the Court does recognize that the expense and duration of this litigation would have increased had the parties not settled at such an early stage.

There is also a public interest in encouraging settlement. This is especially true where the ultimate outcome of the litigation was unknown, as it was here. Before settling, Defendants planned on filing motions for summary judgment and a motion to de-certify the collective action.[28] Plaintiffs stated that they would have appealed any adverse ruling on either motion.[29] And had the case proceeded to trial, there would have been no guarantee that the Plaintiffs would have prevailed.

After considering all these factors, the Court finds that the balance weighs in favor of finding that the terms of the Settlement Agreement are fair and reasonable.

---

[25] *Sharier v. Top of the Viaduct, LLC*, No. 5:16-CV-343, 2017 WL 961029, at *1-2 (N.D. Ohio Mar. 13, 2017).
[26] Doc. 77-1 at 10-11.
[27] *Id.* at 11.
[28] *Id.* at 12-13.
[29] *Id.* at 13.

Case No. 1:17-CV-1875
Gwin, J.

Moreover, the Court finds that the distribution of the settlement proceeds based on a proportion of hours worked in relation to the collective action is equitable.[30]

The Court therefore **APPROVES** the settlement of the collective action's claims.

## B. Service Awards

Plaintiffs also ask for service awards of $10,000 each for the two named Plaintiffs and $500 for each of the nine opt-in Plaintiffs whom Defendants deposed.

Incentive or service awards "are typically awards to class representatives for their often extensive involvement with a lawsuit."[31]  Numerous courts have authorized such awards as "efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class."[32]

Here, the Court finds that incentive awards are appropriate for the two named Plaintiffs, Plaintiff Carr and Plaintiff Newsome.  These Plaintiffs assisted counsel in investigating Defendants' wage practices; attended Court dates; attended one of the mediations; answered written discovery requests; gave deposition testimony; and maintained regular and consistent communication with counsel.[33]  However, given the early settlement of this case, the Court reduces the requested service awards to $5,000 each.

With respect to the nine deposed opt-in Plaintiffs, the Court approves service awards for these Plaintiffs.  Acknowledging  the participation of these Plaintiffs in the litigation, the Court finds the payments sufficiently reflect the opportunity cost associated with the time spent preparing for and participating in the depositions.

The Court therefore **AWARDS** $5,000 for Plaintiff Carr and $5,000 for Plaintiff Newsome. The Court **APPROVES** service awards of $500 for the nine deposed opt-in Plaintiffs.

---

[30] *See Dillworth v. Case Farms Processing, Inc.,* No. 5:08-CV-1694, 2010 WL 776933, at *6 (N.D. Ohio Mar. 8, 2010) (approving similar distribution plan as fair and equitable).
[31] *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003).
[32] *Id.*
[33] Doc. 77-1 at 15-16.

Case No. 1:17-CV-1875
Gwin, J.

## C.  Settlement Administrator

The Court **APPROVES** the appointment of Optime Administration, LLC, as Settlement Administrator, which shall perform the duties set forth in the Settlement Agreement pursuant to the continuing jurisdiction of the Court.

## D.  Attorney's Fees

The Settlement Agreement proposes an attorney's fees award totaling 40% of the total Settlement Payment.

An attorney's fee award must be reasonable.[34]  A fee is reasonable when it is "adequate to attract competent counsel, but [ . . . does] not produce windfalls to attorneys."[35]

The Court has discretion to select one of two methods to calculate reasonable attorney's fees in a common fund case: either by using a percentage-of-the-fund calculation or a lodestar multiplier.[36]  The district court must "provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee."[37]

The percentage-of-the-fund method has the advantage of establishing reasonable expectations on the part of counsel as to their expected recovery, and encouraging early settlement before substantial fees and expenses have accumulated.[38]  The lodestar method, however, better accounts for the amount of the work done by the attorneys.[39]

After balancing these considerations, the Court chooses to employ a percentage-of-the-fund method for calculation, including a lodestar cross-check.  The Court notes that this has often been the preferred method for common fund cases.[40]

---

[34] *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008).
[35] *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (internal citation omitted).
[36] *Rawlings v. Prudential–Bache Props.*, 9 F.3d 513, 516-17 (6th Cir.1993).
[37] *Id.* at 516.
[38] *Id.* at 516-17.
[39] *Id.*
[40] *In re Polyurethane Foam*, 168 F. Supp. 3d 985, 1010 (N.D. Ohio 2016) (quoting *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010)).

Case No. 1:17-CV-1875
Gwin, J.

### 1.  *Percentage-of-the-Fund Factors*

The percentage-of-the-fund method supports Plaintiffs' request for attorney's fees, albeit at a reduced amount constituting one-third of the fund.

Under the percentage-of-the-fund method, the Court must consider the following factors in determining whether the requested fund percentage is reasonable: (1) the value of the benefit to the collective action; (2) society's interest in rewarding attorneys who achieve such benefits; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the skill of the litigators on both sides.[41]

The fourth and fifth factors do not weigh in Plaintiff counsel's favor. The Court doubts whether this case was complex.  And as explained later, the Court questions the value of the attorney's services on an hourly basis.

However, every other factor weighs in favor of granting the requested attorney's fees.

First, the results achieved by Plaintiffs' counsel are very good.  The Settlement Agreement provides for a 50% forfeiture of the tip credit Defendants took against all of Plaintiffs' hours worked prior to August 2016 and a 25% forfeiture of the tip credit for hours worked after August 2016.[42] This is "well above" average for recoveries in FLSA collective actions.[43]

Second, there is a public interest in awarding fees to Plaintiffs' attorneys to encourage them to take wage cases like these where the individual claims are small.[44]

Third, Plaintiffs' counsel took this case on a contingency basis, meaning that there was no guarantee that they would be paid at all.

Finally, the Court does not doubt the skill and professional standing of the attorneys who have a history of regularly litigating FLSA collective action cases such as this one.

---

[41] *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974); *Osman,* 2018 WL 2095172, at *5.
[42] Doc. 77-1 at 20.
[43] *See, e.g., Dillworth,* 2010 WL 776933, at *8 (suggesting that a 7% to 11% recovery is about average for class settlements); *Osman,* 2018 WL 2095172, at *5.
[44] *Osman,* 2018 WL 2095172, at *5.

Case No. 1:17-CV-1875
Gwin, J.

Nevertheless, the Court finds that the requested 40% of the fund is too high.

Attorney awards for common fund cases generally range from 20% to 30%, with 25% as the benchmark standard.[45]  In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.[46]

For example, in the very FLSA collective action case Plaintiffs cite, *Osman v. Grube, Inc.*, the court only approved attorney's fees for one-third for the fund for many of the same reasons the Plaintiffs' counsel uses to support their request.[47]  Like this case, *Osman* also involved a recovery constituting a 50% forfeiture of the tip credit, a public interest in awarding the fees, a contingency fee arrangement, and outstanding professional skill and standing of counsel.[48]

In *Thorn v. Bob Evans Farms, Inc.*, another FLSA collective action, the Court approved a fee that was 32.92% of the fund.[49]  *Thorn* also involved extensive discovery, mediation sessions, competent counsel, and risky litigation.[50]

Plaintiffs have provided no explanation why this case merits a higher fee award than what was given in *Osman* or *Thorn*, and the Court sees none.  Accordingly, the Court finds that a one-third of the Settlement Fund attorney's fee award to be more appropriate.

The Court thus **DECREASES** the attorney's fee award to one-third of the fund, or to $1 million.

### 2.   *Lodestar Cross-Check*

This decrease in the attorney's fee award is also supported by the Court's lodestar cross-check. The Court believes that a reduction in fees will help correct for the fact that Plaintiffs' counsel likely overstated their lodestar calculation.

---

[45] *In re Polyurethane Foam*, 168 F. Supp. 3d at 1010.
[46] *See Osman*, 2018 WL 2095172, at *5; *Rotuna*, 2010 WL 2490989, at *7-8 (approving one-third of fund where there was a 25% to 75% recovery; litigation risks and significant work expended; and a contingency arrangement); *Dillworth*, 2010 WL 776933, at *7-8 (approving one-third of fund where there was a recovery constituting one-third of claimed unpaid wages; litigation risks and significant work expended; and a contingency arrangement).
[47] *Osman*, 2018 WL 2095172, at *5.
[48] *Id.*
[49] *Thorn v. Bob Evans Farms, Inc.*, No. 2:12–CV–00768, 2016 WL 8140448, at *3 (S.D. Ohio Feb. 26, 2016).
[50] *Id.* at *2-3.

Case No. 1:17-CV-1875
Gwin, J.

Plaintiffs' counsel here assert that their attorney's fee request results in a 1.39 lodestar multiplier.[51]  Plaintiffs note that a 40% award amounts to $1.2 million and they have calculated a lodestar amount of $860,930.50.[52]

While a 1.39 multiplier would be reasonable,[53] the Court believes that Plaintiffs' lodestar multiplier should probably be much higher.  Plaintiffs' stated lodestar amount of $860,930.50 appears too high.

Although the rates ranging from $395 to $450 an hour charged by the four attorneys in this case are reasonable,[54] the 2,216 hours purportedly expended are not.  This litigation has only spanned about 10 months and settled before summary judgment or any substantial trial preparation. In comparison, other counsel have received compensation for only around 1,500 hours for multi-year litigation involving FLSA collective actions.[55]

Plaintiffs' counsel nevertheless argue that the hours are reasonable given the size and complexity of this case.[56]  Plaintiffs' counsel cite to *Thorn v. Bob Evans Farms, Inc.* to support their case, arguing that there, 5,723.35 hours spent on a case involving a 1,566-member FLSA collective action was found reasonable.[57]  But that case spanned more than three years and involved at least one partial motion for summary judgment.[58]  That is not the case here.

---

[51] Doc. 77-1 at 24-25.
[52] *Id.*
[53] Ohio courts in the Sixth Circuit have generally approved lodestar multipliers of around 2.0 in similar FLSA collective actions such as this one.  *See, e.g., Thorn,* 2016 WL 8140448, at *3 (approving 32.92% of the common fund when that amounted to a 2.01 multiplier of plaintiff's counsel's loadstar attorney's fees); *Swigart v. Fifth Third Bank,* No. 1:11-CV-88, 2014 WL 3447947, at *5-6 (S.D. Ohio July 11, 2014) (approving 2.57 multiplier that was one-third of fund); *Castillo v. Morales, Inc.,* No. 2:12-CV-650, 2015 WL 13021899, at *7 (S.D. Ohio Dec. 22, 2015) (approving 2.5 multiplier).
[54] *See Osman,* 2018 WL 2095172, Doc. 79-1 at 26 (in FLSA collective action, approving $450/hour for Cleveland attorney and $650/hour for Chicago attorney).
[55] *See, e.g., Doe 1-2 v. Deja Vu Servs., Inc.,* No. 2:16-CV-10877, 2017 WL 2629101, at *10 (E.D. Mich. June 19, 2017) (approving 1,555.63 hours of requested 2,000+ hours in three-year FLSA case dealing with 28,177 members); *Gentrup v. Renovo Servs., LLC,* No. 1:07-CV-430, 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) (approving 1,683.5 hours in four-year FLSA case).
[56] Doc. 77-1 at 25.
[57] *Id.*
[58] *Thorn,* 2016 WL 8140448, at *3.

Case No. 1:17-CV-1875
Gwin, J.

Because the parties have not submitted any detailed accounting of their hours, the Court cannot determine which hours are reasonable and which are not.  Nevertheless, the Court believes that than an award deduction to one-third of the fund corrects for the overstated lodestar amount.

**E.  Attorney's Costs**

Plaintiffs' counsel also seek reimbursement from the fund for their costs totaling $11,377.62. Plaintiff states that these costs are for filing fees, advertising, photocopying, telephone conference calls, mailings, lawsuit administration, travel, meals, lodging, and other litigation-related costs.[59]  The Court **APPROVES** these costs as reasonable.

### III. CONCLUSION

For these reasons, the Court **GRANTS** the motion for approval of the Settlement Agreement and the appointment of the settlement administrator.  The Court **GRANTS IN PART** and **DENIES IN PART** the motion for service awards and attorney's fees and costs.

IT IS SO ORDERED.

Dated:  July 27, 2018                               _s/        James S. Gwin_
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE

---

[59] Doc. 77-1 at 26-27.